United States District Court
Southern District of Texas
**ENTERED**
April 29, 2022
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

DEMETRICE VENTERS,              §
                               §
     Plaintiffs,               §
                               §
v.                             §    CIVIL ACTION NO. H-20-2272
                               §
WALGREEN COMPANY,              §
                               §
                Defendant.     §

### MEMORANDUM OPINION AND ORDER

Plaintiff, Demetrice Venters ("Venters" or "Plaintiff"), brings this action against her employer Walgreen Company ("Walgreen" or "Defendant"), for sexual harassment and retaliation in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. ("Title VII"), and the Texas Commission on Human Rights Act (TCHRA), Texas Labor Code § 21.001, et seq.[1]  Pending before the court are Defendant Walgreen Co.'s

---

[1] Plaintiff's Original Complaint, Docket Entry No. 1, pp. 1-2. Plaintiff's Original Complaint alleged additional claims for race discrimination in violation of Title VII, 42 U.S.C. § 1981, and the Texas Labor Code, sex discrimination in violation of Title VII and the Texas Labor Code, and age discrimination in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621, et seq., but Plaintiff abandoned those claims during her deposition. See Oral and Videotaped Deposition of Demetrice Venters ("Venters' Deposition"), Exhibit A to Plaintiff's Response in Opposition to Defendant's Motion for Summary Judgment ("Plaintiff's Response"), pp. 155:10-158:13, Docket Entry No. 31-1, pp. 40-41 (stipulating that the only claims being pursued in this action are claims for sexual harassment and retaliation). See also Plaintiff's Response, Docket Entry No. 31, p. 5 (stating that Plaintiff is "alleging sexual harassment/hostile work environment and retaliation"). Page numbers for docket entries in the record refer to the pagination inserted at the top of the page by the court's electronic filing system, CM/ECF.

Motion for Summary Judgment ("Defendant's MSJ") (Docket Entry No. 27); and Defendant's Motion to Strike Plaintiff's Unexplained and Improper Changes to Her Deposition Testimony ("Defendant's Motion to Strike") (Docket Entry No. 28).  For the reasons stated below, Defendant's MSJ will be granted, Defendant's Motion to Strike will be denied as moot, and this action will be dismissed.

## I.  <u>Undisputed Facts</u>

Venters is an African-American woman who has been employed by Walgreen as a Registered Pharmacist for over thirty (30) years.[2] In December of 2007 Venters became a floater pharmacist, meaning that she works at multiple stores in a district.[3]  Plaintiff nevertheless has a "home" location, which since October of 2017, has been a Walgreens store 12715 in Baytown, Texas.[4]  Plaintiff's immediate supervisor is the pharmacy manager at the Baytown store, Krisina Gilmore ("Gilmore").  Plaintiff's next level supervisor is the manager of the Baytown store to whom Gilmore reports.  During the time at issue in this action, the manager of the Baytown store was initially Pam Garza, followed by Angelique Cerino.[5]

---

[2]Venters' Deposition, p. 22:2-3, Docket Entry No. 31-1, p. 7.

[3]<u>Id.</u> at 61:5-63:24, Docket Entry No. 31-1, p. 17.

[4]<u>Id.</u> at 64:21-65:11, Docket Entry No. 31-1, pp. 17-18.

[5]<u>Id.</u> at 69:7-71:6, Docket Entry No. 31-1, p. 19.  <u>See also</u> Declaration of Christopher Magee ("Magee Declaration"), ¶ 3, Exhibit 3 to Defendant's MSJ, Docket Entry No. 27-3, pp. 2-3.

Christopher Magee ("Magee") is Walgreen's District Manager of Pharmacy and Retail Operations for the Houston East District, District 337, which is the district in which Venters works.[6] Venters contends that Magee has been sexually harassing her since November of 2015 when he asked her to meet him at a hotel or motel.[7] Plaintiff contends that since then, Magee has harassed her by visiting stores to which she was assigned while she was working her shift and telling her that she can call him anytime,[8] and standing right beside her.[9] Venters contends that she called Walgreen's employee hotline to report Magee's conduct in February, March, April, and November of 2018,[10] and that sometime later she learned from Gilmore that Magee was trying to have her discharged.[11] Walgreen disagrees that Venters complained about Magee on all of those occasions, but accepts her contentions for purposes of summary judgment.[12]

---

[6]Venters' Deposition, p. 75:19-23, Docket Entry No. 31-1, p. 20.  See also Magee Declaration, ¶ 2, Exhibit 3 to Defendant's MSJ, Docket Entry No. 27-3, p. 2.

[7]Venters' Deposition, pp. 169:23-170:6, Docket Entry No. 31-1, p. 44.  See also id. at 166:1-17, Docket Entry No. 31-1, p. 43.

[8]Id. at 166:19-167:14, Docket Entry No. 31-1, p. 43.

[9]Id. at 165:15-25, Docket Entry No. 31-1, p. 43.

[10]Id. at 175:10-15, 254:9-14, 257:21-264:14, Docket Entry No. 31-1, pp. 45, and 65-67.

[11]Id. at 267:20-268:6, Docket Entry No. 31-1, p. 68.

[12]Defendant's MSJ, Docket Entry No. 27, p. 10.

Walgreen, however, acknowledges that in February of 2018 it received an anonymous complaint alleging sexual harassment by unnamed district managers, and that the complainant later called back and named Magee as the harasser.  Asset Protection Manager Paul Fredericksen ("Fredericksen") investigated the anonymous complaint, and after interviewing Magee, concluded that the complaint was unsubstantiated..[13]

On May 27, 2018, Matthew May ("May"), manager of a Walgreen's store 3138 in Baytown, Texas, came up behind Plaintiff and began to rub her shoulders.[14]  Plaintiff considered May's actions sexual harassment because she had not given him permission to touch her.[15] On other occasions May would stand behind Venters watching her work, a practice that made Venters uncomfortable.[16]  Venters reported May's conduct to Walgreen's hotline.[17]

In October of 2018 Venters received a rating of 2.9, "partially achieving expectations" on her annual performance review for fiscal year 2018.[18]  The 2.9 rating was the same rating that she

---

[13]Declaration of Paul Fredericksen ("Fredericksen Declaration"), ¶¶ 3-4, Exhibit 7 to Defendant's MSJ, Docket Entry No. 27-7, pp. 2-3.

[14]Venters' Deposition, pp. 120:16-121:14, and 158:3-161:5, Docket Entry No. 31-1, pp. 31-32 and 41-42.

[15]Id. at 162:2-5, Docket Entry No. 31-1, p. 42.

[16]Id. at 120:16-121:14, 163:1-165:6, Docket Entry No. 31-1, pp. 31-32 and 42-43.

[17]Id. at 163:21-23, Docket Entry No. 31-1, p. 42.

[18]Id. at 84:3-85:9 and 256:6-257:14 Docket Entry No. 31-1,
(continued...)

received in October of 2017 on her annual performance review for the previous year.[19]  In October of 2019 Venters received a rating of 3.0, "achieving expectations," on her annual performance review.[20]  In October of 2020 Venters received a rating of 2.8, "partially achieving expectations," on her annual performance review.[21]  Venters did not disagree with any of the ratings that she received on her annual performance reviews for 2018-2020.[22]

In September of 2019, Walgreen reduced pharmacist hours throughout the company.  As a result, the guaranteed hours of all floater pharmacists in Houston Area 2 were reduced from 80 hours every two weeks to 64 hours.  Because Venters' District, Houston East, District 337, is within Houston Area 2, Walgreen's decision to reduce pharmacist hours impacted Venters along with all the other floater pharmacists in Houston Area 2.  In all, 15 floater pharmacists, including Venters, had their hours reduced in 2019.[23] The decision to reduce pharmacists' hours in 2019 was made by Houston Area 2 leadership in an effort to align budgeted pharmacist

---

[18](...continued)
pp. 22-23 and 65-66.

[19]Id. at 256:6-257:14, Docket Entry No. 31-1, pp. 65-66.

[20]Id. at 89:11-24, Docket Entry No. 31-1, p. 24.

[21]Id. at 90:17-91:19, Docket Entry No. 31-1, p. 24.

[22]Id. at 87:18-21 (2018), 90:11-14 (2019), 92:20-24 (2020), Docket Entry No. 31-1, pp. 23-24.

[23]Magee Declaration, ¶ 4, Exhibit 3 to Defendant's MSJ, Docket Entry No. 27-3, p. 3.

hours with business needs; neither Magee nor any other District Manager was involved in the decision.[24]

On September 17, 2019, Plaintiff filed a Charge of Discrimination with the Texas Workforce Commission Civil Rights Division ("TWC") alleging that in 2018 she was sexually harassed by Magee and by May, that Walgreen did nothing to address the harassment, and that after she complained of harassment, Magee and May singled her out for poor treatment.[25]  Plaintiff also alleged that "[a]s of late August 2019, my hours have been cut from 80 and other forms of retaliation [are] occurring."[26]

## II.  Defendant's Motion for Summary Judgment

Venters contends that Walgreen discriminated against her in violation of Title VII and the TCHRA by subjecting her to a sexually hostile environment, and by retaliating against her for complaining of sexual harassment by giving her poor performance reviews, threatening her job security, and reducing the number of hours that she worked.  Walgreen argues that it is entitled to summary judgment on Venters' hostile work environment claims because those claims "are primarily based on events that she alleges occurred years before she ever filed her Charge with the

---

[24]Id. ¶ 5.

[25]Charge of Discrimination, Exhibit C to Plaintiff's Response, Docket Entry No. 31-3, p. 2.

[26]Id. at 3.

[TWC] and are therefore time barred,"[27] and because "the alleged harassment was not based on sex and did not affect a term, condition, or privilege of her employment."[28]  Without disputing that Venters engaged in activity protected by Title VII and the TCHRA, Walgreen argues that it is entitled to summary judgment on her retaliation claims because she never suffered an adverse employment action, there is no causal connection between any adverse action and her protected activity, and Venters cannot rebut Walgreen's legitimate, nonretaliatory reasons for any adverse employment action.[29]  Venters responds that genuine issues of material fact preclude granting Walgreen's MSJ.[30]

## A.   Applicable Law

### 1.   Standard of Review

Summary judgment is authorized if the movant establishes that there is no genuine dispute about any material fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  The Supreme Court has interpreted the plain language of Rule 56 to mandate the entry of summary judgment "after adequate time for discovery and upon motion, against a party who fails to make a

---

[27]Defendant's MSJ, Docket Entry No. 27, p. 14.

[28]Id.

[29]Id. at 21-22.

[30]Plaintiff's Response, Docket Entry No. 31.

showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 106 S. Ct. 2548, 2552 (1986). Disputes about material facts are genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 106 S. Ct. 2505, 2511 (1986). "The party moving for summary judgment must 'demonstrate the absence of a genuine issue of material fact,' but need not negate the elements of the nonmovant's case." Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam) (quoting Celotex, 106 S. Ct. at 2552). "If the moving party fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's response." Id. If, however, the moving party meets this burden, "the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." Id. "[T]he court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." Reeves v. Sanderson Plumbing Products, Inc., 120 S. Ct. 2097, 2110 (2000). Factual controversies are to be resolved in favor of the nonmovant, "but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." Little, 37 F.3d at 1075. The court will not, "in the absence of any proof, assume that the nonnmoving party could or would prove the necessary facts." Id. (emphasis in original).

-8-

2.   <u>Title VII and the TCHRA</u>

Title VII makes it "an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's . . . sex."   42 U.S.C. § 2000e-2(a)(1).   The TCHRA similarly prohibits employers from discriminating against an employee on the basis of sex.   Tex. Lab. Code §§ 21.051.   Sexual harassment is a type of sex discrimination prohibited by both Title VII and the TCHRA.   <u>See</u> <u>Meritor Savings Bank, FSB v. Vinson</u>, 106 S. Ct. 2399, 2405 (1986) ("[C]ourts have uniformly held, and we agree, that a plaintiff may establish a violation of Title VII by proving that discrimination based on sex has created a hostile or abusive work environment."); <u>Waffle House, Inc. v. Williams</u>, 313 S.W.3d 796, 804 (Tex. 2010) ("[A] statutory harassment claim exists under the TCHRA. . . There are two general types of sexual harassment: quid pro quo and hostile work environment.").   <u>See also</u> <u>West v. City of Houston, Texas</u>, 960 F.3d 736, 741 (5th Cir. 2020)(per curiam) ("Title VII . . . makes it unlawful for employers to require 'people to work in a discriminatorily hostile or abusive environment.'") (quoting <u>Harris v. Forklift System, Inc.</u>, 114 S. Ct. 367, 370 (1993)).

Both Title VII and the TCHRA also prohibit employers from retaliating against an employee who engages in certain protected activities such as complaining about sexual harassment.   <u>See</u> 42

U.S.C. § 2000e-3(a); and Tex. Lab. Code § 21.055.  <u>See also</u> <u>City of</u> <u>Waco v. Lopez</u>, 259 S.W.3d 147, 151 (Tex. 2008) ("The [T]CHRA plainly proscribes retaliation for having opposed conduct made unlawful by the [T]CHRA, irrespective of the merits of the underlying discrimination claim.").  The Texas Supreme Court has recognized that "[t]he [T]CHRA was enacted to address the specific evil of discrimination and retaliation in the workplace," <u>id.</u> at 153, as well as to coordinate and conform with federal anti-discrimination and retaliation laws under Title VII.  <u>Id.</u> at 154-55.  And in <u>Waffle House</u>, the Texas Supreme Court recognized that

> [o]ne express purpose of the [TCHRA] is to "provide for the execution of the policies of Title VII of the Civil Rights Act of 1964 and its subsequent amendments." [Texas Labor Code § 21.001(1).]  Sexual harassment is a recognized cause of action under Title VII and the TCHRA, and Texas courts look to analogous federal law in applying the state Act.

313 S.W.3d at 804 (citations omitted).  Accordingly, the court applies the same standards when analyzing Venters' Title VII and TCHRA claims.  <u>See</u> <u>Wright v. Chevron Phillips Chemical Co., L.P.</u>, 734 F. App'x 931, 933 n. 2 (5th Cir. 2018)(per curiam) (citing <u>Satterwhite v. City of Houston</u>, 602 F. App'x 585, 589 (5th Cir.)(per curiam), <u>cert. denied</u>, 136 S. Ct. 87 (2015)("[F]or the same reasons [plaintiff's] Title VII claim fails, his TCHRA claim fails.").

**B.   Analysis**

    1.   <u>Walgreen Is Entitled to Summary Judgment on Venters'
Claims of Hostile Work Environment Based on Sexual
Harassment</u>

Walgreen argues that it is entitled to summary judgment on
Venter's claim of sexual harassment through creation of a hostile
work environment because Venters' "complaints of a hostile work
environment are primarily based on events that she alleges occurred
years before she ever filed her Charge with the [TWC] and are
therefore time barred,"[31] and because "the alleged harassment was
not based on sex and did not affect a term, condition, or privilege
of her employment."[32]

       (a)   Venters' Sexual Harassment Claims Based on Creation
          of a Hostile Work Environment Are Time Barred

       **(1)   Additional Law**

A Title VII plaintiff must exhaust administrative remedies by
filing a charge of discrimination with the Equal Employment
Opportunity Commission ("EEOC") within 180 days of learning of the
unlawful conduct.   42 U.S.C. § 2000e-5(e)(1); <u>National Railroad
Passenger Corp. v. Morgan</u>, 122 S. Ct. 2061, 2070 (2002); <u>Huckabay
v. Moore</u>, 142 F.3d 233, 238 (5th Cir. 1998).   Because Texas has a
state agency for civil rights complaints, the TWC, it is a

---

[31]Defendant's MSJ, Docket Entry No. 27, p. 14.

[32]<u>Id.</u>

-11-

"deferral state" in which Title VII extends the charge filing period for discrimination claims to 300 days.  42 U.S.C. § 2000e-5(e)(1); Huckabay, 142 F.3d at 238.  Filing a timely administrative charge "is a precondition to filing suit in district court." Taylor v. Books A Million, Inc., 296 F.3d 376, 379 (5th Cir. 2002), cert. denied, 123 S.Ct. 1287 (2003) (quoting Dao v. Auchan Hypermarket, 96 F.3d 787, 789 (5th Cir. 1996)(per curiam)).  Like Title VII, "a TCHRA action requires an exhaustion of administrative remedies that begins by filing a complaint with the Texas Workforce Commission [C]ivil [R]ights [D]ivision." Waffle House, 313 S.W.3d at 804.  In light of work sharing agreements between the agencies and the desire to avoid duplication of efforts, courts consider the filing of a charge with the TWC as satisfying both the state and federal administrative exhaustion requirements.  See Vielma v. Eureka Company, 218 F.3d 458, 462 (5th Cir. 2000) (recognizing that pursuant to a Worksharing Agreement between the EEOC and the TWC, each agency is "the other['s] . . . agent for the purpose of receiving and drafting charges, including those that are not jurisdictional with the agency that initially receives the charges").

The Supreme Court's opinion in Morgan, 122 S. Ct. at 2061, outlines the requirements for the timely filing of discrimination charges under Title VII.  In Morgan, the Court stated that "discrete discriminatory acts are not actionable if time barred,

even when they are related to acts alleged in timely filed charges." Id. at 2072.  In so reasoning, the Court distinguished Title VII claims stemming from discrete incidences of discrimination from claims arising out of a hostile work environment.  Observing that a hostile work environment is defined as a series of separate acts that collectively constitute a single "unlawful employment practice," the Court reasoned that the entire time period of the hostile work environment can be considered by a court in determining liability as long as at least "an act contributing to the claim occurs within the filing period." Id. at 2074 (citing 42 U.S.C. § 2000e-5(e)(1)).  But each incident of discrimination and each retaliatory employment action is a separate, legally-cognizable, employment action.  Morgan, 122 S. Ct. at 2073.  Only those incidents that took place within the timely filing period can be deemed actionable under the statute. Id.  "Because each discrete act starts a new clock for filing charges alleging that act, the charge must be filed within the 180- or 300-day period after the occurred." Id. at 2072.  See also Jackson v. University of Texas M.D. Anderson Cancer Center, 54 F. App'x 404, *3 (5th Cir. 2002) (5th Cir. 2002) (per curiam) (describing the charge filing requirements for Title VII claims asserted in the State of Texas).

**(2)   Application of the Law to the Undisputed Facts**

In Response to Defendant's MSJ, Venters asserts that she filed a Charge of Discrimination with the EEOC on December 10, 2018,[33] but the only Charge of Discrimination in the summary judgment record is the charge that Venters filed with the TWC on September 17, 2019.[34] Moreover, during her deposition Venters testified that she only filed one Charge of Discrimination against Walgreen.[35]   Actions occurring more than 300 days before filing the charge, or before November 21, 2018, are time-barred under Title VII, and actions occurring more than 180 days before filing the charge, or before March 21, 2019, are time barred under the TCHRA.[36]

**(i)   Allegations Regarding Matthew May**

Venters' only allegation of sexual harassment regarding May is that on May 27, 2018, he came up beside her and rubbed her shoulder.[37]   Venters acknowledges that May did not touch her

---

[33]Plaintiff's Response, Docket Entry No. 31, p. 9.   <u>See also</u> Plaintiff's Original Complaint, Docket Entry No. 1, p. 3 ¶ 9 (alleging that she filed a Charge of Discrimination with the EEOC on December 10, 2018).

[34]Charge of Discrimination, Exhibit C to Plaintiff's Response, Docket Entry No. 31-3, p. 2.

[35]Venter's Deposition, pp. 24:13-27:2, Docket Entry No. 31-1, pp. 7-8.

[36]Defendant's MSJ, Docket Entry No. 27, p. 15.

[37]Venters' Deposition, pp. 120:16-121:14, 158:14-162:25, Docket Entry No. 31-1, pp. 31-32 and 41-42.

anywhere else before or after May 27, 2018, and that since then he has not done anything else that bothered her.[38]  While Venters also complained that May had "a tendency . . . [to] stand behind [her] all the time,"[39] she does not consider that sexual harassment.[40] Venters' allegation regarding May involves a discrete incident that occurred on May 27, 2018, over a year before she filed her Charge of Discrimination on September 17, 2019.  Accordingly, Venters' allegations regarding Matthew May are time-barred under both the TCHRA and Title VII.

(ii) Allegations Regarding Christopher Magee

Venters' primary allegation of sexual harassment regarding Magee is that in November of 2015, he told her that "when [they] go to the pharmacy programs he wanted [them] to meet at the motel" and that he could "get [her] off from work."[41]  Venters admits that Magee asked her to meet him at a motel only once in November of 2015, and that she did not report it to Walgreen until February of 2018.[42]  Venters does not dispute that her complaint about Magee's conduct in November of 2015 is time-barred but argues that

---

[38]Id. at 161:24-162:25, Docket Entry No. 31-1, p. 42.

[39]Id. at 121:9-12, Docket Entry No. 31-1, p. 32.

[40]Id. at 163:1-14, Docket Entry No. 31-1, p. 42.

[41]Id. at 60:4-9, Docket Entry No. 31-1, p. 16.

[42]Id. at 173:9-175:12, Docket Entry No. 31-1, p. 45.

[w]hile it is true that some of Plaintiff's claims are
too distant, and thus, time-barred, they still
demonstrate that there existed an environment of
pervasive sexual harassment which was tolerated by
Defendant. Plaintiff was not the only one to experience
harassment by Mr. Magee. . . In fact, it appears that
Mr. Magee's behavior was the worst kept secret in
Defendant's workplace. . . Mr. Magee has a reputation
for harassing African American woman [sic]; Plaintiff —
an African American woman — was one of his many victims.
. . According to Plaintiff, even Mr. Frederickson, the
man in charge of <u>loss prevention</u>, knew of the culture of
harassment. . . Defendant failed to address this
predatory environment, and Plaintiff's time-barred claims
only serve to further support this idea; Defendant knew
about the harassment and failed to act.[43]

Because Venters acknowledges that Magee asked her to meet him
at a motel only once, in November of 2015, any claim of sexual
harassment based on this discrete incident is time barred by more
than three years under both Title VII and the TCHRA.[44]   Although
Walgreen argues that many of Venters' other complaints about
Magee's conduct, <u>i.e.</u>, that he made inappropriate comments to her,
and that he had a reputation for harassing African American women
are also time-barred, Venters has not alleged this conduct as
discrete acts of sexual harassment but, instead, as acts belonging
to a series of acts that collectively constitute one unlawful
employment practice.[45]   Acknowledging that Venters' allegations that

---

[43]Plaintiff's Response, Docket Entry No. 31, pp. 9-10 (citing
Venters' Deposition, pp. 57:3-5, 58:20-22, 141:9-13, 148:21-23, and
263:10-15, Docket Entry No. 31-1, pp. 16, 37-38, and 67).

[44]Venters' Deposition, pp. 173:9-13, Docket Entry No. 31-1,
p. 45.

[45]<u>See</u> Charge of Discrimination, Exhibit C to Plaintiff's
Response, Docket Entry No. 31-3, p. 2 (alleging that "I am forced
(continued...)

-16-

Magee visited stores to which she was assigned while she was working her shift and that he would "be right by her"[46] or "in [her] face all the time,"[47] alleges conduct that occurred within the applicable charge filing periods for both Title VII and the TCHRA,[48] Walgreen argues that it is entitled to summary judgment on Venters' claims for a hostile work environment because neither standing "right by her" or being "in her face" constitutes sexual harassment as a matter of law.  Walgreen also argues that absent evidence of sexual harassment within the charge filing period, the continuing violation doctrine does not apply to her otherwise time-barred allegations of sexual harassment, e.g., that Magee asked Venters to meet him at a motel.[49]  Because, for the reasons stated in the following section, the court concludes that Venters fails to cite evidence capable of establishing that she suffered any sexual harassment within the charge filing period for either Title VII or the TCHRA, Venter's hostile work environment claims against Magee are also time-barred.

---

[45](...continued)
to continue to work with Mr. Magee and continue[] to be harassed on a daily basis").  See also Plaintiff's Original Complaint, Docket Entry No. 1, p. 4 ¶ 13 ("Ms. Venters has been forced to work with Mr. Magee and continues to be harassed daily.").

[46]Venters' Deposition, p. 165:22-33, Docket Entry No. 31-1, p. 43.

[47]Id. at 122:2-3, Docket Entry No. 31-1, p. 32.

[48]Defendant's MSJ, Docket Entry No. 27, p. 18.   See also Defendant Walgreen Co.'s Reply in Support of Its Motion for Summary Judgment ("Defendant's Reply"), Docket Entry No. 34, pp. 5 and 11.

[49]Defendant's Reply, Docket Entry No. 34, pp. 11-12.

> (b) Venters Fails to Raise a Fact Issue for Trial on Her Claim for a Sexually Hostile Work Environment

### (1)  Additional Law

To establish a hostile work environment claim when the alleged harasser is a superior, Venters must show that (1) she belongs to a protected group; (2) she was subjected to unwelcome harassment; (3) the harassment was based on her protected characteristic (female sex); and (4) the harassment affected a term, condition, or privilege of employment. See E.E.O.C. v. Boh Brothers Construction Co., L.L.C., 731 F.3d 444, 453 (5th Cir. 2013) (en banc) (citing Lauderdale v. Texas Department of Criminal Justice, Institutional Division, 512 F.3d 157, 162-63 (5th Cir. 2007)).  To prove that the alleged harassment was because of her sex, Venters must establish "that but for the fact of her sex, [she] would not have been the object of harassment." Jones v. Flagship International, 793 F.2d 714, 719 (5th Cir. 1986), cert. denied, 107 S. Ct. 952 (1987).  To prove that the alleged harassment affected a term, condition, or privilege of her employment, Venters must establish that the alleged harassment was "sufficiently pervasive so as to alter the conditions of employment and create an abusive working environment." Id. at 719-20.  The harassment must be "both objectively and subjectively offensive, one that a reasonable person would find hostile and abusive, and one that the victim in fact did perceive to be so." Faragher v. City of Boca Raton, 118 S. Ct. 2275, 2283 (1998) (citing Harris, 114 S. Ct. at 370-71).  In

-18-

determining whether a work environment is objectively hostile or abusive and therefore actionable under Title VII, courts "use an objective 'reasonable person' standard." Boh Brothers, 731 F.3d at 453 (citing Oncale v. Sundowner Offshore Services, Inc., 118 S. Ct. 998, 1003 (1998)).  Courts must also look to the totality of the circumstances examining "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Harris, 114 S. Ct. at 371.  "[The] conduct must be extreme to amount to a change in the terms and conditions of employment." Faragher, 118 S. Ct. at 2284.  Conduct that is merely offensive is not actionable.  Id. at 2283-84 ("The[] standards for judging hostility are sufficiently demanding to ensure that Title VII does not become a 'general civility code.'").  See also Weller v. Citation Oil & Gas Corp., 84 F.3d 191, 194 (5th Cir. 1996), cert. denied, 117 S. Ct. 682 (1997) ("Title VII was only meant to bar conduct that is so severe and pervasive that it destroys a protected classmember's opportunity to succeed in the workplace.").

### (2)  Application of the Law to the Undisputed Facts

Walgreen does not dispute that Venters belongs to a protected group (female), or that she was subjected to conduct that she subjectively believed to be offensive.  Walgreen argues that it is

entitled to summary judgment on Venter's Title VII and TCHRA hostile environment claims because there is no evidence to establish that the alleged harassment was based on her sex, female, or that the harassment was sufficiently severe or pervasive to alter a term, condition, or privilege of employment.[50]

            (i)  Venters Fails to Show that the Alleged Harassment Was Based on Her Sex

Asserting that "Venters fails to connect Magee's alleged conduct with her sex and has no evidence that it constitutes sexual harassment,"[51] Walgreen argues that Venters cannot establish that Magee's alleged harassment was based on sex because she has nothing other than her indirect subjective belief to support this claim.[52]

Citing Oncale, 118 S. Ct. at 1002, and Boh Brothers, 731 F.3d at 460-61, for recognizing that harassment based on sex can include conduct that is not overtly sexual or is facially sex neutral, Venters argues that

> Mr. Magee's harassment was motivated by gender. Mr. Magee has a history of singling out female employees, specifically, African American female employees. (Ex. A — 57:3-5, 58:20-22, 141:9-13, 148:21-23). But for Plaintiff's sex, she would have not been the object of Mr. Magee's pervasive harassment. But for Plaintiff's sex, Mr. Magee would not have propositioned her to meet him in a motel room. (Ex. A — 166:7-14). But for

---

[50]Defendant's MSJ, Docket Entry No. 27, p. 14.

[51]Id. at 18.

[52]Id. at 18-19.

> Plaintiff's sex, Mr. Magee would not have made
> inappropriate remarks, such as, "it's good to hear you"
> nor would he have stood uncomfortably close to Plaintiff.
> (Ex. A — 167:5-6, 165:22-24). . . . Taken separately, his
> acts may seem harmless, but when one looks at the entire
> picture it is plain to see that Mr. Magee['s] behavior is
> all too common for workplace harassers; the insidious
> comments and his encroaching physical presence, taken in
> light of his trying to lure Mr. Venters to a motel where
> he could "get [her] off anytime" demonstrates exactly how
> Mr. Venters was harassed on the basis of her sex.[53]

Citing <u>Champagne v. Tetra Applied Technologies Inc.</u>, Civil Action
No. G-05-299, 2005 WL 3478171 (5th Cir. December 20, 2005), for
stating that "[w]hile Plaintiff's deposition testimony may impact
the weight and credibility of the evidence that he presents at
trial, that impact is a determination that must be left to the
trier of fact," <u>id.</u> at *5, Venters argues that genuine issues of
material fact preclude granting Walgreen's motion for summary
judgment on her hostile work environment claims.[54]

When asked at her deposition to "[t]ell the jury, please, all
the ways that Mr. Magee sexually harassed you,"[55] Venters responded:

> Well, I — I don't know if you would call it sexual
> harassment. . . [L]et me give you an example. I was at
> a pharmacy event and he was on this side and another
> district manager was on the other side and I was getting
> my food. And then I — before I can turn to my right, he
> was standing right there beside me. He always made it a
> point to be right by me. If I was in a room, he was
> going to find a way to be right by me. So he — it

_____

[53]Plaintiff's Response, Docket Entry No. 31, p. 13.

[54]<u>Id.</u> at 12-13.

[55]Venters' Deposition, p. 165:13-14, Docket Entry No. 31-1,
p. 43.

doesn't look like sexual harassment, but to me I know
what he was doing.[56]

Venters also testified that Magee made inappropriate comments to
her like telling her that she could call him anytime and that it
was good to hear her,[57] and that Magee had a reputation for singling
out African American women for harassing treatment.[58]

Venters bears the burden to show that the alleged harassment
occurred because of her sex.  Venters has failed to establish that
there is a disputed issue of material fact on this point.  The only
evidence that the harassment of which Venters complains occurred
because of her sex is Venters' testimony that in 2015 Magee asked
her to meet him at a motel during a pharmacy conference, and told
her that he could get her off anytime.  Venters' selectively quotes
from her deposition to make it appear as though Magee said he could
"get [Venters] off" sexually,[59] but Venters testified that she meant
Magee could get her off of work anytime:

> Q.   Okay.   So  you  said  the  sexual  harassment  by
>      Mr.  Magee  first  started  with  respect  to  this
>      meeting  at  the  pharmacy  program  when  he  said
>      something  about  meeting  at  the  hotel  or  at  a  motel.
>      Is  that  correct?
>
> A.   Uh-huh.

---

[56]Id. 165:15-25.

[57]Id. at 166:19-167:14.

[58]Id. at 176:11-25, Docket Entry No. 31-1, p. 45.

[59]Plaintiff's Response, Docket Entry No. 31, p. 7 (citing
Venters' Deposition, p. 166:7-14, Docket Entry No. 31-1, p. 43).

Q.   Yes?

A.   Yes.

Q.   And that was in November of 2015?

A.   Yes.

Q.   And what specifically was said to you then?

A.   That — when he — about meeting during the pharmacy
     programs.  And then he said, you know, we can meet
     at the pharmacy programs and then we can go to the
     motel and I can get you off.  You know I can get
     you off.

Q.   Okay.

A.   Yeah.

Q.   Meaning he can get you off of work?  Correct?

A.   Yes.[60]

Venters also testifies that Fredericksen, "the man in charge

of <u>loss prevention</u>, knew of the culture of harassment."[61]   But

Magee's alleged reputation for harassing African American women is

not supported by any evidence in the record.   The only evidence

related to this allegation is Venters' testimony that in early 2016

Walgreen pharmacy manager, Bernard Eckford, told her that Magee

likes African-American women.[62]   Not only does Venters fail to cite

any evidence that Magee had a reputation for harassing African

---

[60]Venters' Deposition, pp. 169:23-170:16, Docket Entry No. 31-
1, p. 44.

[61]Plaintiff's Response, Docket Entry No. 31, p. 10.

[62]Venters' Deposition, p. 175:11-178:4, Docket Entry No. 31-1,
pp. 45-46.

American women, but even if she did cite such evidence it would have no bearing on whether Magee caused Venters to experience a sexually hostile work environment.  See Frank v. Xerox Corp., 347 F.3d 130, 136 (5th Cir. 2003) (citing Celestine v. Petroleos de Venezuela SA, 266 F.3d 343, 355-56 (5th Cir. 2001) (stating that the pattern-or-practice method of proof is not available in private, non-class action lawsuits)).  Moreover, as Venters acknowledges, her allegation that Magee makes a point of visiting the stores in which she works during her shifts and standing close to her are not evidence of sexual harassment.[63]

Venter's testimony shows that Magee's presence made her workplace uncomfortable, and that she subjectively believed that his actions were motivated by her sex, but Venters' subjective belief that Magee's actions were because of her sex is not enough for a jury to find that the harassment was in fact because of her sex.  See Nichols v. Lewis Grocer, 138 F.3d 563, 570 (5th Cir. 1998) (quoting Little v. Republic Refining Co., Ltd., 924 F.2d 93, 96 (5th Cir. 1991) ("A subjective belief of discrimination, however genuine, [cannot] be the basis of judicial relief.")).  See also Heath v. Elaasar, 763 F. App'x 351, 354 (5th Cir. 2019) (per curiam) (holding that the plaintiff's subjective belief that the defendant's alleged harassment was because of her sex, was not

_____

[63]Id. at 165:15-25, Docket Entry No. 31-1, p. 43.  See also id. at 185:16-187:10, Docket Entry No. 31-1, p. 48 (acknowledging that she subjectively believed that Magee was sexually harassing her).

enough for a jury to find that the alleged harassment was in fact because of her sex).

Venters' cite to Champagne in support of her argument that whether Magee's alleged harassment was based on her sex is a fact issue for trial is misplaced because Champagne is distinguishable. In Champagne the plaintiff, who was injured while being transferred from one vessel to another at sea, brought a negligence claim under general maritime law.  2005 WL 3478171, *1-*3.  In support of its motion for summary judgment, the defendant cited the plaintiff's deposition testimony that "he did not consider the weather or sea conditions to be too rough to perform the transfer safely," id. at *4, as evidence that the seas were sufficiently calm to properly, and not negligently, conduct the transfer.  The district court denied the defendant's motion for summary judgment explaining that the plaintiffs' "perspective is not determinative of those conditions . . . especially . . . in light of conflicting testimony as to the conditions themselves." Id. at *5.  Champagne is distinguishable because it is a maritime negligence case and not an employment discrimination case, and because unlike Venters, who asks the court to disbelieve her deposition testimony by arguing that the weight and credibility of her testimony is for the jury to decide,[64] Champagne raised a genuine issue of material fact for trial by citing evidence other than his own deposition.  Id.

[64]Plaintiff's Response, Docket Entry No. 31, pp. 12-13.

> (ii) Venters Fails to Establish that the Alleged Harassment Was Sufficiently Severe or Pervasive to Affect a Term, Condition, or Privilege of Her Employment

Arguing that the alleged harassment did not affect a term, condition, or privilege of Venter's employment, Walgreen characterizes her complaints about Magee's conduct as not sufficiently pervasive or severe to support a hostile work environment claim.[65]  Venters responds that

> [t]he harassment [she] experienced from Mr. Magee was frequent, (Ex. A — 58:21-22, 59:23-25, 60:3-9, 165:24-25, 166:1-168:20, 167:5-6, 169:23-170:2).  It happened so often, that Plaintiff was forced to complain to Defendant on numerous occasions, including but not limited to, multiple calls to the employee hotline and reporting said harassment on employee surveys.  (Ex. A — 242:23-25, 263:10-15).  It happened often enough that Mr. Magee had a reputation in the workplace for such behavior.  (Ex. A — 57:3-5, 58:20-22, 141:9-13, 148:21-23).  Mr. Magee's harassment unreasonably interfered with Plaintiff's work performance.  (Ex. A — 85:16-21, 122:7-23, 255:25-256:5) (Ex. B).  Prior to Mr. Magee's harassment, Plaintiff, in her long career with Defendant, was well-established as a loyal and passionate employee.  (Ex. A — 22:2-3, 33:10-11, 39:16-18).  Now every, single day Plaintiff works she is filled with fear — fear that she will be terminated, fear that she will continue to be harassed.  Mr. Magee is careful to position himself directly in Plaintiff's orbit; she can hardly turn around without Mr. Magee standing right there or getting in her face.  (Ex. A — 165:22-25).  His close and unwelcome presence, in light of the harassment, unreasonably interferes with Plaintiff's work performance.[66]

---

[65]Defendant's MSJ, Docket Entry No. 27, pp. 19-21.  <u>See also</u> Defendant's Reply, Docket Entry No. 34, pp. 11-12.

[66]Plaintiff's Response, Docket Entry No. 31, p. 14.

Venters' evidence that she complained of Magee's conduct both to Walgreen and to the TWC is evidence from which a reasonable jury could conclude that Magee's alleged harassment was subjectively offensive.  See Aryain v. Wal-Mart Stores Texas LP, 534 F.3d 473, 480 (5th Cir. 2008) (holding that plaintiff's testimony and pursuit of harassment claims would allow a jury to conclude that she subjectively perceived her working environment to be hostile or abusive).  But Venters has failed to cite evidence from which a reasonable jury could conclude that the harassment was either objectively offensive or sufficiently severe or pervasive to affect a term, condition, or privilege of her employment.  See Faragher, 118 S. Ct. at 2283-84.

In determining whether a work environment is objectively hostile or abusive courts look to the totality of the circumstances and examine "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance."  Harris, 114 S. Ct. at 371. Regarding the frequency of Magee's harassment, Venters alleges in both the Charge of Discrimination that she filed with the TWC and in her Original Complaint that Magee harassed her on a daily basis, but fails to offer any evidence from which a reasonable jury could conclude that Magee, in fact, harassed her on a daily basis. Venters' allegations that Magee harassed her on a daily basis are

contradicted by her testimony that during the relevant time period she saw Magee every month, but not every week:

Q.   . . . [D]id you ever see Mr. Magee every month?

A.   Yes.

Q.   During what time period did you see Mr. Magee every month?

A.   2015, 2016, 2017, 2018, 2019, I would say 2020.

Q.   Did you ever see Mr. Magee every week?

A.   No.  Maybe every two weeks.

Q.   Okay.  During what time period would you have seen Mr. Magee every two weeks?

A.   Pretty much all those times — those years — those time period.

Q.   So from 2015 through 2020?

A.   Uh-huh.

Q.   Yes?

A.   Yes.  I'm sorry.  Yes.[67]

Without more, Venters cannot show the harassment of which she complaints was pervasive. Compare Hockman v. Westward Communications, LLC, 407 F.3d 317, 328 (5th Cir. 2004) (finding that conduct was not severe when the plaintiff "did not even estimate how many times [the] conduct occurred"), with Lauderdale, 512 F.3d at 164 (finding harassment pervasive when plaintiff received unwanted phone calls "ten to fifteen times a night for

---

[67]Venters' Deposition, p. 79:4-19, Docket Entry No. 31-1, p. 21.

almost four months"), and <u>Farpella-Crosby v. Horizon Health Care</u>, 97 F.3d 803, 806 (5th Cir. 1996) (harassing conduct was pervasive when it was described as occurring "two or three times a week").

Venters also fails to cite evidence from which a reasonable jury could conclude that Magee's alleged harassment was severe, physically threatening, or humiliating. <u>See Harris</u>, 114 S. Ct. at 371. The Supreme Court has explained that those factors "are sufficiently demanding to ensure that Title VII does not become a 'general civility code.'" <u>Faragher</u>, 118 S. Ct. at 2283-84 (quoting <u>Oncale</u>, 118 S. Ct. 1002). Venters seeks to impose Title VII liability on her employer because her district manager would visit the store in which she was working, stand right by her, and make remarks, such as, "you can call me anytime," and "it's good to hear you."[68] The conduct about which Venters complains is neither severe, physically threatening, nor humiliating under the governing standards. <u>See Faragher</u>, 118 S. Ct. at 2284 ("Properly applied, [the standards for judging hostility] will filter out complaints attacking 'the ordinary tribulations of the workplace, such as the sporadic use of abusive language, gender-related jokes, and occasional teasing.'"); <u>Shepherd v. Comptroller of Public Accounts of the State of Texas</u>, 168 F.3d 871, 872-74 (5th Cir.), <u>cert. denied</u>, 120 S. Ct. 395 (1999) (finding harassment was not severe when a male coworker made comments to a female plaintiff about her private parts and intermittently rubbed plaintiff's arm).

---

[68]<u>Id.</u> at 167:5-6, Docket Entry No. 31-1, p. 43.

Although Venters argues that Magee's actions filled her with fear of losing her job and fear of continuing harassment, Venters testified that Magee never threatened her and that his actions did not affect her ability to perform her job:

> Q.   And you've always been able to perform your job duties as a floater pharmacist at Walgreens despite anything that Mr. Magee ever did to you.  Correct?
>
> A.   Yes, that — that's correct.
>
> Q.   Did anyone at Walgreens, Mr. May or Mr. Magee or anyone else, ever physically threaten you?
>
> A.   No.[69]

Venters has not shown that the alleged harassment interfered with her work performance, or "destroy[ed]" her "opportunity to succeed in the workplace."  See West, 960 F.3d at 743 (quoting Weller, 84 F.3d at 194).  Venters has merely shown that she subjectively believed Magee's actions were offensive.  But "[a] subjective belief of discrimination, however genuine, [cannot] be the basis of judicial relief."  Nichols, 138 F.3d at 570 (quoting Little, 924 F.2d at 96).  See also Faragher, 118 S. Ct. at 2283-84 (Title VII does not impose a "general civility code" on employers).

Even assuming that Magee stood close to Venters and frequently "got in her face," Magee's alleged conduct pales in comparison to far more egregious conduct that courts in this jurisdiction have found insufficient to avoid summary judgment on hostile work environment claims.  See Hockman, 407 F.3d at 321-22 and 328

---

[69]Id. at 221:12-18, Docket Entry No. 31-1, p. 57.

(affirming summary judgment in favor of the employer and finding conduct was not severe where the alleged harasser told the plaintiff that a co-worker had a "nice behind and body," "brush[ed] up against her breasts and behind," "on one occasion . . . slapped [the plaintiff's] behind with a newspaper," "once attempted to kiss [the plaintiff]," and on more than one occasion, asked the plaintiff to come in early so that he could be alone with her); Barnett v. Boeing Co., 306 F. App'x 875, 879–80 (5th Cir. 2009) (finding that plaintiff's supervisor's leering at her, touching her in sexually inappropriate and unwelcome ways, stalking her, making excuses to be near her, glaring at her, and intimidating her were insufficient to "destroy[] her ability to succeed in the workplace," as necessary to alter a term, condition, or privilege of employment).  In light of these and other similar cases, Magee's alleged conduct would not affect a term, condition, or privilege of Venter's employment or destroy her opportunity to succeed in the workplace as a matter of law.


   (c) Conclusions

  Because Venters fails to cite evidence capable of proving that Magee's alleged harassment was either based on her sex, or sufficiently pervasive or severe to affect a term, condition, or privilege of her employment, Venters has failed to raise a genuine issue of material fact for trial on her hostile work environment claims.  See West, 960 F.3d at 741–43.

2.   <u>Walgreen is Entitled to Summary Judgment on Venters'</u>
<u>Retaliation Claim</u>

For purposes of summary judgment, Walgreen "does not . . .
dispute that Venters engaged in protected activity by complaining
about Magee or filing a charge of discrimination or this lawsuit."[70]
Walgreen argues that it is entitled to summary judgment on Venters'
retaliation claim because plaintiff has failed to present evidence
capable of establishing a prima facie case of retaliation by
showing either that she suffered an adverse employment action or
that there is a causal connection between her protected activity
and an adverse employment action.[71]   Walgreen also argues that
"[e]ven if Venters could establish a prima facie case . . . she
would still be unable to rebut Walgreen's legitimate, non-
retaliatory reason for any employment actions it took."[72]

(a)   Additional Law

"The substantive law governing Title VII and TCHRA retaliation
claims is identical."   <u>Gorman v. Verizon Wireless Texas, L.L.C.</u>,
753 F.3d 165, 170 (5th Cir. 2014) (citing <u>Shackelford v. Deloitte</u>
<u>& Touche, LLP</u>, 190 F.3d 398, 403 n. 2 (5th Cir. 1999)).   A
retaliation claim may be proved through direct or circumstantial
evidence.   <u>McCoy v. City of Shreveport</u>, 492 F.3d 551, 556 (5th Cir.
2007) (per curiam).   <u>See also Crutcher v. Dallas Independent School</u>

_____

[70]Defendant's MSJ, Docket Entry No. 27, p. 22.

[71]<u>Id.</u>   <u>See also</u> Defendant's Reply, Docket Entry No. 34, pp. 12-
15.

[72]Defendant's MSJ, Docket Entry No. 27, p. 22.

District, 410 S.W.3d 487, 492 (Tex. App. — Dallas, August 26, 2013, no pet.) ("Although [Texas courts] consider the TCHRA's plain language and state precedent in interpreting the statute, [they] also look to federal law for interpretive guidance to meet the legislative mandate that the [TCHRA] is intended to 'provide for the execution of the policies of Title VII . . . and its subsequent amendments.'") (quoting Texas Labor Code § 21.001(1)).  Absent direct evidence of retaliation, both federal and state courts apply the burden shifting analysis established by the Supreme Court in McDonnell Douglas Corp. v. Green, 93 S. Ct. 1817 (1973).  Within that framework plaintiffs bear the initial burden of proving a prima facie case.  Id. at 1824.

> Making a prima facie case for a retaliation claim requires the plaintiff to "demonstrate that: (1) she engaged in protected activity; (2) an adverse employment action occurred; and (3) a causal link exists between the protected activity and the adverse employment action. Under [Title VII and the TCHRA], an employee has engaged in protected activity if she has opposed any practice made an unlawful employment practice under [Title VII or the TCHRA]."

Gorman, 753 F.3d at 170-71 (quoting Royal v. CCC & R Tres Arboles, L.L.C., 736 F.3d 396, 400 (5th Cir. 2013)).

Establishment of a prima facie case gives rise to an inference of retaliation, which shifts the burden of production to the defendant who must then articulate a legitimate, nonretaliatory reason for the challenged employment action.  McCoy, 492 F.3d at 557; Crutcher, 410 S.W.3d at 493.  Once a defendant articulates such a reason the inference of retaliation raised by the prima

facie showing drops from the case, and the plaintiff bears the burden of establishing that the employer's stated reason is a pretext for the real retaliatory purpose. McCoy, 492 F.3d at 557; Crutcher, 410 S.W.3d at 493. Venters must cite evidence capable of proving "that the adverse employment action would not have occurred 'but for' the protected activity." Wantou v. Wal-Mart Stores Texas, L.L.C., 23 F.4th 422, 437 (5th Cir. 2022). See also University of Texas Southwestern Medical Center v. Nassar, 133 S. Ct. 2517, 2534 (2013) (holding that a plaintiff asserting a Title VII retaliation claim "must establish that his or her protected activity was a but-for cause of the alleged adverse action by the employer"). If a plaintiff fails to raise a genuine issue of material fact that defendant's stated reason is a pretext for retaliation, the defendant is entitled to summary judgment. See McCoy, 492 F.3d at 560-62; Crutcher, 410 S.W.3d at 498.

(b)   Application of the Law to the Undisputed Facts

(1)   Venters Has Failed to Establish a Prima Facie Case of Retaliation

Walgreen argues that Venters cannot establish a prima facie case of retaliation under either Title VII or the TCHRA because she suffered no materially adverse employment action, and because she cannot establish a causal connection between any adverse employment action and her protected activity.[73]

---

[73]Id. at 22-29.   See also Defendant's Reply, Docket Entry No. 34, pp. 12-15.

(i)   Venters Fails to Establish that She
      Suffered   an   Materially   Adverse
      Employment Action

Asserting that "Venters alleges that only Magee retaliated against her, but much of his allegedly retaliatory conduct is time barred,"[74] Walgreen argues that "[t]he remaining timely retaliation allegations against Magee likewise fail as a matter of law b]ecause they are insufficient to constitute a 'materially adverse' employment action."[75]  In the retaliation context, this means that the adverse action might "dissuade a reasonable worker from making or supporting a charge of discrimination." <u>Burlington Northern & Santa Fe Railway Co. v. White</u>, 126 S. Ct. 2405, 2415 (2006).  <u>See also</u>  <u>Newbury v. City of Windcrest, Texas</u>, 991 F.3d 672, 678 (5th Cir. 2021) (same).

Venters responds that genuine issues of material fact preclude granting Walgreen's motion for summary judgment on her retaliation claims because she has suffered and continues to suffer numerous materially adverse employment actions, and because there exists a causal link between her protected activities and the materially adverse employment actions.[76]  Citing her own deposition, Plaintiff argues that

---

[74]Defendant's MSJ, Docket Entry No. 27, p. 22.

[75]<u>Id.</u>

[76]Plaintiff's Response, Docket Entry No. 31, pp. 15-19.

[s]ince complaining of harassment, [she] has learned that
Mr. Magee "has it out for her." (Ex. A — 267:20-268:18).
This appears to be no secret as it is known by
Defendant's other employees; in fact, that's who warned
Plaintiff. . . Mr. Magee tries to write her up. . . He
has tried to put her on a Performance Improvement Plan
[P.I.P.]. (Ex. A — 124:3-11).    He has even had
Plaintiff's performance review scores changed. (Ex. A —
85:16-86:21).    According to Plaintiff, Mr. Magee has
altered her hours in retaliation. (Ex. A — 42:4-11,
91:2-6, 98:20-23, 103:2-12).   Not only is Plaintiff
subjected to a hostile work environment day in and day
out, these acts, taken together, amount to a "change in
or loss of job responsibilities" so "significant and
material that it rises to the level of an adverse
employment action." . . . Plaintiff, a hard-working and
loyal employee of Defendant, has worked for decades with
good performance scores, no write-ups, and no placement
on P.I.P.'s.   Yet now, after speaking out about
Mr. Magee's harassment, Plaintiff is suddenly on the
receiving end of low performance scores, write-ups, and
threats of a P.I.P. (Ex. A — 85:16-86:21, 124:3-11 and
Ex. D).  It is hard to believe that a long-time employee
with Ms. Venters' level of competence would suddenly, out
of the blue, begin to have such a dramatic decline in her
work performance.  It is **not** hard to believe that a woman
who complains of workplace sexual harassment would find
herself on the receiving end of adverse employment
actions; that is exactly what is happening here.   The
above-mentioned changes are "employment decision[s]
[which affect] the terms and conditions of employment"
and as such constitute an adverse employment action.[77]

Venters also argues that the retaliation she suffered "continued .

. . to the present . . . [when] just weeks after her deposition in

this case . . . [she received] a final warning of termination

discipline."[78]

---

[77]Id. at 16-17.

[78]Id. at 18 (citing Case Information, Exhibit E, Docket Entry
No. 31-5).

Venters argues that she suffered a materially adverse employment action when Magee attempted to write her up and attempted to place her on a P.I.P.[79]  Written reprimands, warnings, or threats such as the threatened write-up and P.I.P. at issue, generally are not adverse employment actions, particularly when they do no dissuade the employee from pursuing discrimination complaints.  See Brooks v. Houston Independent School District, 86 F.Supp.3d 577, 586 (S.D. Tex. 2015).  See also id. at 589 ("The unimplemented decision to place [the plaintiff] on probation is not an adverse employment action and does not support her retaliation claim.").  Although a reprimand or write-up may be materially adverse if it results in more serious consequences such as changes to compensation, duties, or job title, id. at 586, Walgreen argues, and Venters does not dispute, that nothing bad ever happened to her; her job duties and responsibilities never decreased, her benefits never changed or were eliminated, her hourly rate never decreased, Walgreens never denied her any requested leave of absence, and Walgreens never denied her a promotion.[80]

Venters argues that she suffered a materially adverse employment action when Magee directed her supervisor to lower her overall performance evaluation score in October of 2018 from 3.0 to

---

[79]Id. at 17 (citing Venters' Deposition, p. 124:3-11, Docket Entry No. 31-1, p. 32).

[80]Defendant's MSJ, Docket Entry No. 27, pp. 12-13 (citing Venters' Deposition, pp. 115:10-119:4, Docket Entry No. 31-1, pp. 30-31).

2.9.[81]   But when asked why Magee asked for the change, Venters answered that her supervisor told her that Magee said the performance evaluation did not match what the store was doing,[82] when asked if she believed that explanation, Venters answered, "I don't know,"[83] and when asked if there was anything in her 2018 evaluation with which she disagreed, Venters answered, "there's no disagreement."[84]   Asking Venters' supervisor to change her overall performance evaluation score from 3.0 to 2.9 does not constitute a materially adverse employment action.   See Mitchell v. Snow, 326 F. App'x 852, 856 (5th Cir. 2009) ("[A]n employment review lower than [the plaintiff] expected would not have dissuaded a reasonable employee from asserting discrimination.").   Although Venters argues that she was on the "receiving end of low performance scores" following her complaints, she cites no evidence in support of this argument.   The performance evaluations attached to Venters' response to Defendant's MSJ about which she testified, show that her overall scores fluctuated within a narrow range of 2.8 to 3.0, and that she did not disagree with any of those scores.[85]

_____

[81]Plaintiff's Response, Docket Entry No. 31, pp. 16-17 (citing Venters' Deposition, pp. 85:16-86:21, Docket Entry No. 31-1, p. 23).

[82]Venters' Deposition, pp. 86:22-87:1, Docket Entry No. 31-1, p. 23.

[83]Id. at 87:2-4.

[84]Id. at 87:18-21.

[85]See § I, above, notes 20-24.   See also Annual Performance Reviews for Fiscal Years 2019 and 2020, Exhibits B and D to
(continued...)

-38-

Venters argues that she continues to suffer retaliation as evidenced by a final warning of termination that she received weeks after her deposition in this case.  In support of this argument, Venters cites only a Case Information document opened on May 14, 2019, and closed on November 1, 2019, which does not mention a final warning.[86]  Because Venters deposition was taken over two years later on December 30, 2021,[87] the Case Information document that she cites does not support her argument that she suffered retaliation after her deposition.  Venters therefore has failed to cite any evidence capable of establishing that she has suffered any retaliatory act since being deposed in this case.

The only action of which Venters complains that arguably constitutes a materially adverse employment action is that Walgreen reduced the number of hours she worked from 80 to 64 in a two-week period.[88]  But Venters fails to cite evidence capable of establishing a causal link between that action and the complaints of sexual harassment she made against Magee, and even if she could establish a causal link, she has failed to offer evidence capable of establishing that Walgreen would not have reduced her hours but for her having engaged in protected conduct.

---

[85](...continued)
Plaintiff's Response, Docket Entry Nos. 31-2 and 31-4, respectively.

[86]Plaintiff's Response, Docket Entry No. 31, p. 14 (citing Exhibit E, Case Information Sheet, Docket Entry No. 31-5, p. 3).

[87]Venters' Deposition, p. 1, Docket Entry No. 31-1, p. 2.

[88]Magee Declaration, ¶ 4, Exhibit 3 to Defendant's MSJ, Docket Entry No. 27-3, p. 3.

                              (ii) Venters Has Not Established the Causal
                              Connection Element of a <u>Prima Facie</u> Case

        Stating that "[t]he only potentially materially adverse
employment action that Venters suffered was a reduction in hours in
late August 2019, which she alleges was 'punishment' for 'when
you're an employee who — speaks up,'"[89] Walgreen argues that there
is no causal connection between Venters' reduction in hours and her
protected activity.[90]   Citing Venters' deposition testimony,
Walgreen argues that Venters admits that she "doesn't have any
evidence" that Magee,[91] the only person she claims retaliated
against her, had any input into the reduction in hours, and that
the hours reduction was based entirely on occurrences wholly
unrelated to her.[92]   In response Venters merely asserts that
"[w]ithout Plaintiff reporting Mr. Magee's harassment, Plaintiff
would not have been subjected to adverse employment actions,
including but not limited to . . . a reduction in hours."[93]

        Walgreen has submitted uncontradicted evidence that in
September of 2019 Walgreen reduced pharmacist hours throughout the

──────────────

        [89]Defendant's MSJ, Docket Entry No. 27, p. 27.

        [90]<u>Id.</u> at 27-29.

        [91]<u>Id.</u> at 27 (citing Venters' Deposition, p. 104:23-25, Docket
Entry No. 31-1, p. 27).

        [92]<u>Id.</u> at 27-28 (citing Venters' Deposition, p. 105:1-12, Docket
Entry No. 31-1, p. 28).

        [93]Plaintiff's Response, Docket Entry No. 31, p. 18.

company, that as a result, the guaranteed hours of all floater
pharmacists in Houston Area 2 were reduced from 80 hours every two
weeks to 64 hours, and that in all, 15 floater pharmacists,
including Venters, had their hours reduced.[94]  Walgreen has also
submitted uncontradicted evidence that the decision to reduce
pharmacists' hours in 2019 was made by Houston Area 2 leadership in
an effort to align budgeted pharmacist hours with business needs,
and that neither Magee nor any other District Manager was involved
in that decision.[95]  Moreover, Venters has failed to cite evidence
capable of establishing that anyone involved in the decision to
reduce the hours of floater pharmacists knew about her protected
activity.  Because Venters fails to cite evidence that any of the
decision makers who decided to reduce the hours of floater
pharmacists knew about the complaints she had filed against Magee,
and because the decision affected the 14 other floater pharmacists
who worked in Houston Area 2, Venters has failed to demonstrate a
causal connection between her protected activity and Walgreen's
decision to reduce her hours.  See Manning v. Chevron Chemical Co.,
LLC, 332 F.3d 874, 884 (5th Cir. 2003), cert. denied, 124 S. Ct.
1060 (2004) (refusing to find a causal link when plaintiff failed
to offer evidence that the decision makers knew of the plaintiff's

---

[94]Magee Declaration, ¶ 4, Exhibit 3 to Defendant's MSJ, Docket
Entry No. 27-3, p. 3.

[95]Id. ¶ 5.

protected activity and the alleged harm applied to other employees).   Accordingly, the court concludes that Venters has failed to establish a prima facie case of retaliation under either Title VII or the TCHRA.

### (2)   Walgreen Cites a Legitimate, Non-Retaliatory Reason for Reducing Venters' Hours

Citing the Magee Declaration Walgreen argues that in September of 2019 the Houston Area 2 leadership reduced the hours of all floater pharmacists in the larger area in which Venters' district and other districts were located to align budgeted pharmacist hours with business needs.[96]   Because Walgreen has stated a legitimate, non-retaliatory reason for reducing Venters' hours, the burden shifts to Venters to cite evidence capable of establishing that Walgreen's stated reason for reducing her hours is a pretext for retaliation and that but for her having engaged in protected activity her hours would not have been reduced.

### (3)   Venters Fails to Raise a Fact Issue for Trial

The court concludes that defendant is entitled to summary judgment on Venter's retaliation claim because she has failed to cite evidence capable of raising a fact issue as to whether

---

[96]Defendant's MSJ, Docket Entry No. 27, p. 29 (citing Magee Declaration, ¶ 3, Docket Entry No. 27-3, p. 3).   See also Defendant's Reply, Docket Entry No. 34, p. 15.

Walgreen's stated reason for reducing her hours was a pretext for retaliation.  Venters does not offer any evidence from which a reasonable jury could conclude that Walgreen's stated reason for reducing her hours was a pretext for retaliation or that but for her protected activity her hours would not have been reduced.  To the contrary, Venters testified at her deposition that the decision to reduce her hours was based entirely on occurrences wholly unrelated to her:

> Q.   Do you have any idea why the decision to cut hours was made?
>
> A.   I do have an idea.
>
> Q.   What's the idea that you have?
>
> A.   I — our stock has been what, 43, 51, since October 2017.  I don't think Walgreens is doing as well as they appear it [sic] to be.
>
> Q.   So you think hours were cut because Walgreens is not thriving as a company?
>
> A.   Compared to — compared to the way it used to be, I will say no.
>
> Q.   That's correct.  Walgreens' performance, at least in terms of stock prices is going down.  Correct?
>
> A.   Yes, that's correct.
>
> Q.   And you think that has something to do with the hours decrease.  Right?
>
> A.   Yes.
>
> Q.   Do you know if the hours decrease had anything to do with budgetary concerns?
>
> A.   Yes.

Q.   It did, didn't it?

A.   Yes.

Q.   Okay.   Any other reasons why you believe the decision to cut hours was made other than Walgreens is not doing well, the stock prices are low, and budgetary concerns?

A.   That's all I can recall.[97]

Because Venters has failed to offer evidence capable of establishing that Walgreen's stated reasons for reducing her hours in September of 2019 were pretexts for retaliation, the court concludes that Walgreen is entitled to summary judgment on the retaliation claims that plaintiff has asserted under both Title VII and the TCHRA.


### III.   <u>Defendant's Motion to Strike</u>

Citing Federal Rule of Civil Procedure 30(e)(1)(B) for requiring a deponent seeking to make changes to her deposition testimony to "sign a statement listing the changes <u>and the reasons for making them</u>,"[98] Walgreen moves the court to strike "certain of the approximately 130 changes . . . Venters seeks to make to the transcript of her recent deposition because they do not comply with [Rule] 30(e)(1)(B)."[99]   Walgreen argues that the court should strike

---

[97]Venters' Deposition, pp. 106:25-108:1, Docket Entry No. 31-1, p. 28.

[98]Defendant's Motion to Strike, Docket Entry No. 28, p. 1.

[99]<u>Id.</u>

Venters' proposed changes to her deposition because (1) she provides no reason whatsoever for some of the changes (color coded in blue in Exhibit A), (2) the only reason she states is "relevant" (color coded in green in Exhibit A), or (3) the changes are based on Venters' subsequent review of case documents, frequently one that was not produced at the time Venters was deposed (color coded in pink in Exhibit A).[100]  Alternatively, Walgreen asks the court to re-open Venters' deposition for an additional four hours at Venters' expense.[101]

Asserting that "under Rule 30(e)(1), [she] is permitted to 'make changes in form or substance' provided that she 'sign a statement listing the changes and the reasons for making them,'"[102] and that she "has signed a statement listing her changes and the reasons for them in compliance with Rule 30(e)(1),"[103] Venters argues that Defendant's Motion to Strike and request to re-depose her should both be denied.[104]  Asserting that the remedy for improper change is not to re-depose her, but instead, to keep both

---

[100]Id. at 2.  See also Exhibit A, Color-coded Correction Pages submitted by Demitrice Venters, Docket Entry No. 28-1.

[101]Id. at 4.  See also Defendant's Reply in Support of Its Motion to Strike Plaintiff's Unexplained and Improper Changes to Her Deposition Testimony, Docket Entry No. 33.

[102]Plaintiff's Response in Opposition to Defendant's Motion to Strike, Docket Entry No. 32, p. 3.

[103]Id.

[104]Id. at 4.

her original answers and the changes in the record so that Walgreen has the ability to use her original answers to impeach or challenge her credibility.[105]

Although Venters' deposition testimony is central to both Defendant's Motion for Summary Judgment, and Venters' opposition thereto, neither party has argued that any of the changes Venters has submitted to her deposition are relevant to the arguments made for and against that motion. Because this Memorandum Opinion and Order cites Venters' deposition extensively, the court has reviewed the cites to the deposition against Venters' changes, and concludes that neither the court's analysis nor conclusions cite or rely on any of the testimony for which Venters has submitted contested changes, and that Defendant's Motion to Strike should therefore be denied as moot.

## IV.  <u>Conclusions and Order</u>

For the reasons stated in § III, above, the court concludes that Walgreen is entitled to summary judgment on Venters' hostile environment and retaliation claims. Accordingly, Defendant Walgreen Co.'s Motion for Summary Judgment, Docket Entry No. 27, is **GRANTED**.

---

[105]<u>Id.</u>  <u>See also</u> Plaintiff's Surresponse in Opposition to Defendant's Motion to Strike, Docket Entry No. 35, pp. 2-4.

For the reasons stated in § IV, above, the court has been able to resolve Walgreen's motion for summary judgment with relying on any of the unexplained changes that Venters has made to her deposition. Accordingly, Defendant's Motion to Strike Plaintiff's Unexplained and Improper Changes to Her Deposition Testimony, Docket Entry No. 28, is **DENIED as MOOT**.[106]

**SIGNED** at Houston, Texas, on this 29th day of April, 2022.

SIM LAKE
SENIOR UNITED STATES DISTRICT JUDGE

---

[106]As the length of this Memorandum Opinion and Order indicates, the court has expended considerable time reading the parties' papers and performing a significant amount of independent research to be as fully informed as possible when addressing the parties' arguments. While, because of the volume of information presented, it is not impossible that some arguments were overlooked, the parties should assume that failure to expressly address a particular argument in this Memorandum Opinion and Order reflects the court's judgment that the argument lacked sufficient merit to warrant discussion. Accordingly, the court strongly discourages the parties from seeking reconsideration based on arguments that have been or could have been raised.